## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SYNGENTA CROP PROTECTION AG AND SYNGENTA CROP PROTECTION, LLC | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| BASF AGRICULTURAL SOLUTIONS US LLC, | ) ) ) ) | |
| Defendant. | ) ) ) | |

### COMPLAINT FOR PATENT INFRINGEMENT

1.      Plaintiffs Syngenta Crop Protection AG and Syngenta Crop Protection, LLC (collectively "Syngenta") hereby allege for their Complaint against BASF Agricultural Solutions US LLC ("BASF") as follows:

### PARTIES

2.      Syngenta Crop Protection AG is a corporation organized and existing under the laws of Switzerland with its principal place of business at Rosentalstrasse 67, 4058 Basel, Switzerland.

3.      Syngenta Crop Protection, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 410 South Swing Road, Greensboro, North Carolina 27409-2012.

4.       Syngenta is a world-leading agribusiness involved and heavily invested in the research, development, manufacture, and sale of crop protection products and technologies, including fungicides, pesticides, and herbicides.  Syngenta operates globally and focuses on

developing and delivering crop protection and farming practice products for empowering farmers across the United States and worldwide to profitably meet the crop and food demands of a growing population while preserving the natural resources.

5.     BASF is a limited liability corporation organized and existing under the laws of the State of Delaware having its principal place of business at 2 TW Alexander Drive, Durham, North Carolina 27709.  BASF is a direct competitor of Syngenta Crop Protection, LLC in the U.S. herbicide market.

## NATURE OF THE ACTION

6.     This is a civil action for infringement of United States Patent No. 8,404,618 ("the '618 Patent").  This action arises under the patent laws of the United States, Title 35, United States Code.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     The Court has personal jurisdiction over BASF.  BASF is a limited liability company residing in Delaware, so it purposefully avails itself of the benefits of conducting business in and through Delaware.  Moreover, BASF is present and maintains a presence in Delaware, at least through its incorporation in Delaware, and therefore is at home in Delaware.

9.     Venue is appropriate under 28 U.S.C. § 1400(b).  BASF resides in this district.

## THE '618 PATENT

10.     On March 26, 2013, the U.S. Patent and Trademark Office duly and legally issued the '618 Patent, titled "Herbicidal Composition."  A true and correct copy of the '618 Patent is attached as Exhibit 1.

11. The '618 Patent is assigned to Syngenta Crop Protection AG, which in turn has exclusively licensed the '618 Patent to Syngenta Crop Protection, LLC. Syngenta Crop Protection AG and Syngenta Crop Protection, LLC collectively possess all substantial rights necessary to bring this suit for infringement.

12. The '618 Patent is valid, is enforceable, and claims patentable subject matter.

13. The '618 patent generally relates to herbicidal compositions comprising a mixture at least (i) an active herbicide of a specified chemical "formula I" and (ii) a crop "safener" selected from a defined class of safeners. The purpose of the safener is to protect crop plants from phytotoxicity caused by the herbicide while maintaining effective weed control.

14. The "formula I" herbicides covered by the claims of the '618 Patent include, but are not limited to, pyroxasulfone. The recited safeners in the claims of the '618 Patent include, but are not limited to, benoxacor and isoxadifen-ethyl. The use of a formula I herbicide, such as pyroxasulfone, in combination with a crop safener from the specified class, such as benoxacor and isoxadifen-ethyl, is a novel, commercially differentiating, and demand-driving herbicidal composition that enables effective weed control while protecting crops.

## SYNGENTA'S STOREN® PRODUCT

15. Syngenta Crop Protection, LLC makes and sells a herbicidal composition covered by the '618 patent, called Storen®. Storen® includes the patented composition of pyroxasulfone as an active herbicidal component and benoxacor, a covered crop safener, and is used by growers to combat weeds in corn crops. Storen® provides in a single product a herbicidally active amount of pyroxasulfone and a herbicide-antagonistically active amount of benoxacor. The agronomic benefits provided by this combination are a principal reason growers and distributors select products like Storen®.

16.     Storen® has been a significant commercial success for Syngenta.  It provides highly effective weed control across a broad range of crops and environmental conditions and has become an important product within Syngenta's herbicide portfolio.  Storen® has achieved substantial market acceptance and contributes meaningfully to Syngenta's herbicide revenues and competitive position.  Storen® has established a strong and continuing market position in its segment, including sustained market share among key distributor and grower channels.  Therefore, any competing product using the patented combination would appeal to the same customers for the same reasons.

## BASF'S INFRINGING CONDUCT

17.     BASF has recently announced the launch of a new herbicide product, called Ridivex™, which includes pyroxasulfone as an active ingredient, along with dicamba and diflufenzopyr ("DFFP"), and a "built-in crop safener."  BASF already markets a product called Status® that combines two of these active ingredients, dicamba and DFFP, with a built-in safener that is identified in public information as isoxadifen-ethyl.  Given technical considerations and commercial efficiencies related to the associated herbicide chemistry and formulation for these two products, BASF's new Ridivex™ product, on information and belief, uses the same safener— i.e., isoxadifen-ethyl—as is used for Status®.  Using a known EPA-cleared safener facilitates manufacturing efficiency and product performance consistency.

18.     In addition, BASF presently instructs its customers to combine Status® with another BASF product Zidua® SC for "strong burndown and extended residual control" in corn crops. *Status Herbicide*, BASF, https://agriculture.basf.us/crop-protection/products/herbicides/ status.html (last visited July 14, 2026).  BASF's Zidua® SC product includes pyroxasulfone as its active ingredient.  Given that BASF's upcoming Ridivex™ product incorporates the active ingredients of Status® and Zidua® SC into a single product, this provides further evidence to

4

support the conclusion that BASF is using isoxadifen-ethyl as the "built-in" crop safener for Ridivex™. Moreover, in meetings between the parties, BASF has not disputed Syngenta's understanding that Ridivex™ uses the same safener as Status®.

19. Based on publicly available information, BASF's Ridivex™ product is expected to receive EPA registration within days of this filing. In the agricultural chemical industry, EPA registration is the key regulatory milestone that permits a product to be legally marketed and sold in the United States. Without EPA registration, a product cannot be commercially distributed to growers or dealers. Once EPA approval is obtained, there is typically little barrier to market entry, particularly where the product is positioned as a substitute or competitor for an existing branded product.

20. The imminent EPA registration for Ridivex™ will allow BASF to rapidly enter the market by filing state registrations corresponding to its intended state markets, and engaging distributors for stocking and resale. Key agricultural states such as Iowa, Illinois, and Ohio often grant state registration within one to three weeks following EPA approval.

21. Accordingly, and in anticipation of the upcoming planting cycle, BASF has already manufactured and conducted extensive field testing of the infringing Ridivex™ product and is actively promoting it to growers and distributors as an improved or competitive alternative to Syngenta's Storen® product. These infringing activities demonstrate that BASF is prepared to launch and commercialize Ridivex™ immediately upon EPA registration.

22. The market for herbicides such as Storen® is driven by a time-sensitive annual sales cycle involving both distributors and growers. Distributors typically make their primary purchasing decisions between June and September, during which they allocate budget and determine which products they will stock for the upcoming growing season.

23. Once distributors make these purchasing decisions, inventory is committed, and supplier relationships are established for that season.

24. Growers generally purchase products primarily between December and June, corresponding to the growing season, and rely heavily on the products that distributors have already chosen to stock. Growers often make a single or limited number of purchasing decisions of herbicide products for the season. As a result, the June–September distributor purchasing window is a critical inflection point that largely determines sales outcomes for the entire year.

25. If a competing product enters the market during or before this distributor purchasing window—particularly one positioned as a direct alternative to Storen®—it can displace Syngenta's product before sales to growers even begin.

26. BASF is positioning Ridivex™ as a direct competitor to Storen®, specifically because it purportedly offers comparable weed control and crop safety through the same pyroxasulfone–safener combination in a single product. This overlap in composition and functionality creates a direct causal nexus between the patented features and the expected competitive harm. BASF is using comparative advertising and messaging promoting purported equivalent or improved performance to Storen®.

27. If BASF is permitted to launch Ridivex™, it will be able to engage distributors during the current selling season, secure storage space that would otherwise be allocated to Storen®, and influence purchasing decisions for the upcoming growing season.

28. Once a distributor decides to purchase a competing product, that placement is typically maintained for the duration of the season, and displaced products, like Storen®, are unlikely to regain channel access or market placement, resulting in loss of market access that cannot be immediately recovered.

6

29.    BASF's entry will also exert downward price pressure and lead to price erosion for Storen®.  To remain competitive, Syngenta would likely be forced to lower list prices, increase rebates, or offer other pricing concessions, resulting in price erosion directly attributable to BASF's competing product.

30.    The price erosion resulting from BASF's entry would alter pricing expectations going forward, depressing future pricing independent of any specific lost unit sales. Once below-market pricing is introduced, distributors use that pricing as a benchmark in subsequent negotiations, and future pricing expectations become anchored at the lower price point. As a result, the price erosion caused by BASF's entry would have lasting effects on Syngenta's pricing structure and profitability.

31.    BASF's entry is also likely to result in loss of market share, loss of market position, and loss of customers, including both distributors and growers, for the Storen® product.  Loss of customers in this industry is particularly harmful because relationships are built over multiple seasons, product switching decisions are often repeated year-over-year, and regaining lost customers is difficult and uncertain.  Once a grower or distributor switches to a competing product for a season, they are likely to continue using that product in subsequent seasons.  Accordingly, BASF's entry would result not only in immediate lost sales, but also ongoing loss of market share and loss of Syngenta's established market position, which is difficult to restore if lost.

32.    The harms described above, which include displacement during the critical distributor purchasing window, loss of storage space and channel access, long-lasting price erosion, and loss of customer relationships and market share—are not readily quantifiable and cannot be fully compensated by monetary damages.

33.    Once BASF launches its product following EPA registration, these harms will

begin immediately and will continue throughout the relevant sales cycle and beyond.

34. These harms are irreparable and not fully compensable by monetary damages because they involve intangible harms, including harm to Syngenta's competitive position, brand strength, and long-standing customer relationships. These harms would be imminent, substantial, and irreparable, and there is a clear causal nexus between BASF's use of the patented composition and the competitive harm to Syngenta, if BASF is not enjoined from launching and commercializing making, using, offering for sale, or selling its infringing product.

35. On information and belief, BASF actively monitors Syngenta's pending and issued patent applications, such as the '618 Patent, as well as Syngenta's herbicide products, such as Storen®. Accordingly, on information and belief, BASF has been and is aware of the '618 patent as it developed its Ridivex™ product and as it has been instructing its customers to combine Status® and Zidua® SC in treating corn crops. In addition, Syngenta has met with BASF on multiple occasions during which the '618 Patent was discussed.

### COUNT I: DIRECT INFRINGEMENT OF THE '618 PATENT

36. Syngenta incorporates paragraphs 1-35 by reference as if fully set forth herein.

37. Claim 1 of the '618 Patent covers a "herbicidal composition" that "comprises a mixture of a) a herbicidally active amount of a compound of the formula I … and b) a herbicide-antagonistically active amount of a safener …" and reads in its entirety as follows:

A herbicidal composition comprises a mixture of

a) a herbicidally active amount of a compound of the formula I

$$R_2 \diagdown \underset{R_1}{\overset{R_3 \quad R_4}{\diagup}} \overset{(O)_m}{\underset{\parallel}{S}} - [CR_5R_6]_n - Y,$$

wherein

$R_1$ and $R_2$ are each independently of the other hydrogen or $C_1$-$C_{10}$alkyl;

$R_3$ and $R_4$ are each independently of the other hydrogen, $C_1$-$C_{10}$alkyl or $C_1$-$C_{10}$haloalkyl;

M is an integer selected from 1 or 2;

$R_5$ and $R_6$ are each independently of the other hydrogen or methyl;

n is an integer selected from 1 or 2;

Y is phenyl or phenyl substituted by halogen, $C_1$-$C_6$alkyl or $C_1$-$C_6$haloalkyl, or

Y is diazole in which the diazole can be substituted by hydroxyl, halogen, $C_1$-$C_{10}$alkyl or $C_1$-$C_{10}$alkyl substituted by hydroxyl, $C_1$-$C_{10}$alkoxy, $C_1$-$C_4$ haloalkyl, C1-C4haloalkoxy;

and

b) a herbicide-antagonistically active amount of a safener selected from the group consisting of cloquintocetmexyl or a lithium, sodium, potassium, calcium, magnesium, aluminium, iron, ammonium, quaternary ammonium, sulfonium or phosphonium salt thereof, fenchlorazole-ethyl, mefenpyr-diethyl, isoxadifenethyl, furilazole or the R isomer thereof, benoxacor, dichlormid, MON4660, oxabetrinil, cyometrinil, the Z isomer thereof, fenclorim, N-cyclopropyl-4-(2-methoxy-benzoylsulfamoyl)-benzamide, N-isopropyl-4-(2-methoxy-benzoylsulfamoyl)-benzamide, naphthalic acid anhydride or flurazole, or a combination thereof.

38.     BASF's activities with respect to its product Ridivex™, as described above, infringe at least claim 1 of the '618 Patent.

39.     Ridivex™ is a herbicidal composition that includes a mixture of a herbicidally active amount of pyroxasulfone, which is a compound of the formula I as recited in claim 1 of the '618 Patent, and a herbicide-antagonistically active amount of a safener, which, on information of belief, is isoxadifen-ethyl, one of the safeners provided in the group of alternative safeners recited in claim 1 of the '618 Patent.  BASF's public description and promotion Ridivex™ as including pyroxasulfone and a built-in safener indicates that each component of the product is provided, respectively, at herbicidally active and herbicide-antagonistically active amounts.

40.   The structural formula for pyroxasulfone is shown in the '618 patent as compound 1.27 of Table 1:

1.27

41.   The '618 Patent describes compound 1.27 as "3-(5-difluoromethoxy-l-methyl-3-trifluoromethyl-1H-pyrazol-4-ylmethylsulfonyl)-5,5-dimethyl-4,5-dihydroisoxazole," which is the systematic chemical name for pyroxasulfone.

42.   Pyroxasulfone, the active herbicidal ingredient in BASF's Ridivex™ product, meets the limitations of formula I in claim 1 of the '618 Patent, where $R_1$ and $R_2$ are each a $C_1$alkyl, $R_3$ and $R_4$ are each hydrogen, m is the integer 2, $R_5$ and $R_6$ are each a hydrogen, n is the integer 1, and Y is a diazole in the which the diazole is substituted by a $C_1$alkyl, a $C_1$haloalkyl, and a $C_1$haloalkoxyl.

43.   Dependent claims 2-5 and 7-9 provide additional limitations with respect to elements of formula I of claim 1, each of which is also met by pyroxasulfone, as explained above.

44.   Dependent claim 2 recites:

The composition according to claim 1, comprises the compound of the formula I where

$R_1$ and $R_2$ are each independently of the other $C_1$-$C_{10}$alkyl.

45.   Pyroxasulfone, the active herbicidal ingredient in BASF's Ridivex™ product, meets the limitations of formula I as defined in dependent claim 2, where $R_1$ and $R_2$ are each a

10

$C_1$alkyl.

46.    Dependent claim 3 recites:

The composition according to claim 2, comprises the compound of the formula I where

$R_3$ and $R_4$ are each independently of the other hydrogen or $C_1$-$C_{10}$alkyl.

47.    Pyroxasulfone, the active herbicidal ingredient in BASF's Ridivex™ product, meets the limitations of formula I as defined in dependent claim 3, where $R_3$ and $R_4$ are each hydrogen.

48.    Dependent claim 4 recites:

The composition according to claim 3, comprises the compound of the formula I where

$R_5$ and $R_6$ are hydrogen.

49.    Pyroxasulfone, the active herbicidal ingredient in BASF's Ridivex™ product, meets the limitations of formula I as defined in dependent claim 4, where $R_5$ and $R_6$ are each a hydrogen.

50.    Dependent claim 5 recites:

The composition according to claim 4, comprises the compound of the formula I where

n is 1.

51.    Pyroxasulfone, the active herbicidal ingredient in BASF's Ridivex™ product, meets the limitations of formula I as defined in dependent claim 5, where n is 1.

52.    Dependent claim 7 recites:

The composition according to claim 1, comprises the compound of the formula I where

Y is diazole or a diazole substituted by $C_1$-$C_{10}$alkyl, $C_1$-$C_4$ haloalkyl, or C1-C4haloalkoxy.

53.    Pyroxasulfone, the active herbicidal ingredient in BASF's Ridivex™ product,

11

meets the limitations of formula I as defined in dependent claim 7, where Y is a diazole in the which the diazole is substituted by a $C_1$alkyl, a $C_1$haloalkyl, and a $C_1$haloalkoxyl.

54.     Dependent claim 8 recites:

> The composition according to claim 1, where in the compound of the formula I Y is pyrazol-4-yl or pyrazol-5-yl.

55.     Pyroxasulfone, the active herbicidal ingredient in BASF's Ridivex™ product, meets the limitations of formula I as defined in dependent claim 8, where Y is pyrazole-4-l.

56.     Dependent claim 9 recites:

> The composition according to claim 1, wherein the compound of the formula I is 3-(5-difluoromethoxy-l-methyl-3-trifluoromethyl-1H-pyrazol-4-ylmethylsulfonyl)-5,5-dimethyl-4,5-dihydroisoxazole.

57.     This systematic chemical name, as recited in dependent claim 9, is that of pyroxasulfone.

58.     Dependent claim 10 recites:

> A method of combating weeds and weed grasses in crops of useful plants, wherein the useful plants, seed or cuttings thereof or a growing area thereof are treated simultaneously or at separate times with a herbicidally active amount of the herbicide of the formula I as defined in claim 1 and a herbicide-antagonistically active amount of the safener as defined in claim 1.

59.     Dependent claim 11 recites: "The method according to claim 10, wherein the crops of useful plants are maize."

60.     BASF's product information for Ridivex™ describes its application to corn crops post-emergence including BASF's testing of such applications.

61.     Accordingly, and as summarized in the claim chart attached as Exhibit 2 and incorporated herein, BASF's activities with respect to its product Ridivex™, as described above, directly infringe at least claims 1-5 and 7-11 of the '618 Patent.

62.     In addition, BASF's instruction to its customers to combine Status® and Zidua®

SC includes a description of testing BASF performed on the combined products in corn crops. This BASF testing, which involves a herbicidal composition that includes a mixture of a herbicidally active amount of pyroxasulfone and a herbicide-antagonistically active amount of a safener, isoxadifen-ethyl, directly infringes at least claims 1-5 and 7-11 of the '618 Patent for the reasons addressed above.

63.    BASF's direct infringement has damaged, and continues to damage, Syngenta. Syngenta is entitled to recover from BASF damages sustained as a result of BASF's direct infringement of the '618 Patent.  Further, because BASF's infringement has been willful, with full knowledge of Syngenta's patent, Syngenta is entitled to a trebling of damages.

64.    As addressed above in, for example paragraphs 17-35, BASF's acts of infringement have caused, and will continue to cause, irreparable harm to Syngenta.

65.    Syngenta's damages are difficult to quantify, rendering legal damages an inadequate remedy for Syngenta.

66.    The public interest favors an injunction to protect Syngenta's investment-based risk that resulting in the '618 Patent and its commercialization by Syngenta and to enforce the Patent Act's statutory right to exclude others from practicing Syngenta's patented invention.

67.    Accordingly, the circumstances of BASF's infringement warrant injunctive relief barring BASF from further infringement of the '618 Patent.

68.    BASF's infringement warrants a finding that this is an exceptional case, entitling Syngenta to recover its attorney fees and expenses.

**COUNT II: INDUCEMENT OF INFRINGEMENT OF THE '618 PATENT**

69.    Syngenta incorporates paragraphs 1-68 by reference as if fully set forth herein.

70.    In addition to BASF's direct infringement of at least claims 1-5 and 7-11 of the

13

'618 Patent, BASF has induced infringement by its customer growers through taking active steps to encourage direct infringement, e.g., by marketing and sale of the Ridivex™ product with instructions on use that direct its customers to apply Ridivex™ in a manner that meets all of the limitations of at least method claims 10 and 11 of the '618 Patent.

71.     For example, BASF instructs its customers to use Ridivex™ by applying it to corn plants post-emergence as means of controlling broadleaf and grass weeds, addressing, for example, use rates, optimal timing, and spray volumes.  *See* claim chart attached as Exhibit 2 and incorporated herein.

72.     Following those instructions, BASF's customers directly infringe at least method claims 10 and 11 of the '618 Patent.

73.     As described above, BASF has been and is providing its instruction on the infringing use of Ridivex™ with full knowledge both of Syngenta's '618 Patent and that such use would constitute infringement.  On information and belief, BASF actively monitors Syngenta's pending and issued patent applications, such as the '618 Patent, and the parties have repeatedly discussed the '618 Patent.  BASF's awareness of the '618 Patent and its ongoing instruction to its customers to use Ridivex™ in an infringing manner evidences its intent that its customers infringe the patent.

74.     Accordingly, BASF is liable for inducement of infringement of at least claims 10-11 of the '618 Patent with respect to Ridivex™.

75.     BASF has further induced infringement of the '618 Patent by instructing its customers to combine Status® and Zidua® SC to control weeds in post-emergence corn crops in a manner that meets all of the limitations of at least claims 1-5 and 7-11 of the '618 Patent.

76.     Following those instructions, BASF's customers directly infringe at least claims 1-

5 and 7-11 of the '618 Patent.

77.    As described above, BASF has been and is providing its instruction on the infringing combination of Status® and Zidua® SC with full knowledge both of Syngenta's '618 Patent and that such combination would constitute infringement.  On information and belief, BASF actively monitors Syngenta's pending and issued patent applications, such as the '618 Patent, and the parties have repeatedly discussed the '618 Patent.  BASF's awareness of the '618 Patent and its ongoing instruction to its customers to combine Status® and Zidua® SC in an infringing manner evidences its intent that its customers infringe the patent.

78.    Accordingly, BASF is liable for inducement of infringement of at least claims 1-5 and 7-11 of the '618 Patent with respect to the combination of Status® and Zidua® SC.

79.    BASF's inducement of infringement of the '618 Patent has damaged, and continues to damage, Syngenta.  Syngenta is entitled to recover from BASF damages sustained as a result of BASF's infringement of the '618 Patent.  Further, because BASF's infringement has been willful, with full knowledge of Syngenta's patent, Syngenta is entitled to a trebling of damages.

80.    As addressed above in, for example paragraphs 17-35, BASF's acts of infringement have caused, and will continue to cause, irreparable harm to Syngenta.

81.    Syngenta's damages are difficult to quantify, rendering legal damages an inadequate remedy for Syngenta.

82.    The public interest favors an injunction to protect Syngenta's investment-based risk that resulting in the '618 Patent and its commercialization by Syngenta and to enforce the Patent Act's statutory right to exclude others from practicing Syngenta's patented invention.

83.    Accordingly, the circumstances of BASF's infringement warrant injunctive relief barring BASF from further infringement of the '618 Patent.

15

84.    BASF's infringement warrants a finding that this is an exceptional case, entitling Syngenta to recover its attorney fees and expenses.

## COUNT III: CONTRIBUTORY INFRINGEMENT OF THE '618 PATENT

85.    Syngenta incorporates paragraphs 1-84 by reference as if fully set forth herein.

86.    BASF's Ridivex™ product is specifically made or adapted for use according to the method recited in claims 10 and 11 of the '618 Patent—i.e., in the treatment of crops of useful plants, including corn, to combat weeds and weed grasses, and including both a herbicidally active amount of a herbicide of formula I as defined in claim 1 (pyroxasulfone) and, on information and belief, a herbicide-antagonistically active amount of a safener as defined in claim 1 (isoxadifen-ethyl).

87.    As addressed above and on information and belief, BASF, at all relevant times, was aware of the '618 Patent, and knows and knew that Ridivex™ is made or adapted for use in an infringement of one or more claims of the '618 Patent, including at least claims 10-11.

88.    Ridivex™ is not a staple article or commodity of commerce suitable for substantial non-infringing use.  BASF manufactures and sells Ridivex™ specifically for use in the treatment of crops of useful plants, including corn, to combat weeds and weed grasses, and BASF's customers' use of Ridivex™ in this manner directly infringes.

89.    Accordingly, BASF is liable for contributory infringement of at least claims 10 and 11 of the '618 Patent.

90.    BASF's contributory infringement of the '618 Patent has damaged, and continues to damage, Syngenta.  Syngenta is entitled to recover from BASF damages sustained as a result of BASF's infringement of the '618 Patent.  Further, because BASF's infringement has been willful, with full knowledge of Syngenta's patent, Syngenta is entitled to a trebling of damages.

91.     As addressed above in, for example paragraphs 17-35, BASF's acts of infringement have caused, and will continue to cause, irreparable harm to Syngenta.

92.     Syngenta's damages are difficult to quantify, rendering legal damages an inadequate remedy for Syngenta.

93.     The public interest favors an injunction to protect Syngenta's investment-based risk that resulting in the '618 Patent and its commercialization by Syngenta and to enforce the Patent Act's statutory right to exclude others from practicing Syngenta's patented invention.

94.     Accordingly, the circumstances of BASF's infringement warrant injunctive relief barring BASF from further infringement of the '618 Patent.

95.     BASF's infringement warrants a finding that this is an exceptional case, entitling Syngenta to recover its attorney fees and expenses.

## PRAYER FOR RELIEF

Accordingly, Syngenta respectfully requests that the Court enter judgment in its favor, granting it the following relief:

A.     Entry of a judgment that BASF has infringed the '618 Patent under 3 U.S.C. §§ 271(a), (b), and (c);

B.     Entry of a preliminary and permanent injunction enjoining BASF and its officers, employees, agents, consultants, contractors, suppliers, distributors, affiliates, and all others acting in privity with BASF from further infringement of the '618 Patent;

C.     Entry of an award to Syngenta of damages to compensate it for the infringement of the '618 patent by BASF, in an amount to be proven at trial, together with pre-judgment and post-judgment interest and costs, as fixed by the Court;

D.     Entry of an order that BASF pay to Syngenta actual damages in the form of lost

17

profits, or in the alternative, other damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by BASF, in accordance with 35 U.S.C. § 284;

E.      Entry of a finding that, with respect to BASF, this case has been exceptional and awarding to Syngenta its reasonable costs and attorney fees under 35 U.S.C. § 285;

F.      Entry of judgment against BASF on all counts of this Complaint;

G.      An award trebling or otherwise increasing damages under 35 U.S.C. § 284 as a result of BASF's willful infringement of the '618 Patent;

H.      Entry of an award to Syngenta of its costs in this action; and

I.      A grant to Syngenta of additional relief that the Court sees as just.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Syngenta demands trial by jury on all issues so triable.

Dated:  July 14, 2026

**BAKER & HOSTETLER LLP**

*/s/ Jeremy D. Anderson*
Jeremy D. Anderson, Bar No. 4515
1201 North Market Street, 14th Floor
Wilmington, DE 19801-1147
(302) 407-4224
janderson@bakerlaw.com

Toni-Junell Herbert*
Charles C. Carson*
David M. Klecyngier, Esq.*
Daniel P. Wicklund, Esq.*
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW, Suite 1100
Washington, DC 20036
202.861.1500
THerbert@bakerlaw.com
CCarson@bakerlaw.com
DKlecyngier@bakerlaw.com
DWicklund@bakerlaw.com

Leif R. Sigmond, Jr.*
Jennifer M. Kurcz*
BAKER & HOSTETLER LLP
1 North Wacker Drive, Suite 3700
Chicago, IL 60606
Tel: 312.416.6200
LSigmond@bakerlaw.com
JKurcz@bakerlaw.com

* pro hac vice forthcoming

*Attorneys for Syngenta Crop Protection AG and Syngenta Crop Protection, LLC*

19